386 P.2d 246

STATE of New Mexico, Plaintiff-Appellee,

v.

Paul CASAUS, Defendant-Appellant.

No. 7288.

Supreme Court of New Mexico.

Oct. 28, 1963.

Joe Angel, Albuquerque, for appellant.

Earl E. Hartley, Atty. Gen., Shirley C. Zabel, Joel M. Carson, Asst. Attys. Gen., Santa Fe, for appellee.

CARMODY, Justice.

This is an appeal from a conviction of second degree murder.

Appellant alleges error on several different grounds. These consist of a claimed lack of sufficient evidence to sustain a conviction; that the case should have been dismissed because the only direct evidence was an extrajudicial confession, and that

the state was bound by exculpatory statements contained therein relating to self-defense; that the state failed to prove the corpus delicti; and, lastly, that a new trial should have been granted because of certain statements made by the prosecutor in his closing argument.

The circumstances of the case, as shown by the evidence, were that at approximately six o'clock on the afternoon of January 6, 1962, a group of about eight young men, including the appellant, were gathered in a very small room in the rear of a bar at Bernalillo, New Mexico. The room was actually 5′5½″ x 9′ and contained two benches against two of the walls and against one of the other walls empty cases of beer were stacked. The men in the room were drinking wine. The only light in the room came from a light globe outside of the one small window. After the people had been in the room perhaps half an hour, one Ignacio Lucero and the decedent, Manuel Sanchez, Jr., came in. Lucero asked for a drink, but one of the men in the room seized him by his clothing, whereupon Lucero ran out of the room and into the bar itself. Upon this occurring, several of the other persons in the room ran out, but left by a different doorway to the outdoors. Almost immediately, the deceased was seen staggering into the bar, and the bartender grabbed hold of him, but he fell to the floor. The deceased's companion, Lucero, testified that he saw the deceased come into the barroom itself, staggering and with cuts on his face, but otherwise there is no direct testimony as to where the offense occurred, other than the statement or confession of the appellant. In any event, the bartender observed that the deceased was badly hurt and laid him on the floor, away from the crowd that had gathered. The officers were called and, while he was being taken to the hospital, deceased died.

Although the deceased had several rather severe cuts about the head and face, the cause of death was the cutting of the aorta just above the level of the attachment of the left kidney. Actually, the aorta was severed, and there was testimony that this artery was located approximately eight inches inside the surface of the body.

A search of the deceased's clothing and the small room disclosed no weapon of any type. The following day, the officers questioned the young men whom it was thought had been in the small room the night before. The appellant at first denied any knowledge of the affair, but later announced to the sheriff that "he was the one that done it." He then made a statement, which was thereafter put in writing, and there is no contention but that it was free and voluntary. The gist of it was to the effect that appellant and the deceased had had trouble some three years before, and appellant had cut the deceased with a knife.

The deceased then went to California and had only returned a month or two before the fatal night. In the meantime, the appellant had had trouble with the deceased's brother, and the brother had also been cut. Appellant said that he was afraid the deceased was going to get back at him, as this had been reported to him by friends; that on the night of the death, when the deceased and his companion came into the small room and the companion had his small difficulty, the appellant jumped up on one of the benches when everyone else left the room except the deceased; that then the deceased took a step toward him with his hand in his pocket, or in a position to draw a knife, and that thereupon the appellant jumped him, immobilized his arm, and stabbed him several times. Appellant said he then fled from the room into the alley, threw away the knife and went home. After giving this statement to the officers, appellant went with them to search for the knife, but it was never found.

■ Appellant first contends that his motion for dismissal of the charge of murder in the second degree should have been sustained, because of the absence of a showing of malice and that the homicide was justified. The trial court properly instructed the jury as to the necessity of the finding of malice, either express or implied, and we are satisfied from the record that there was sufficient evidence before the jury from which it would have been justified in finding implied malice (see State v. Gilbert, 1933, 37 N.M. 435, 24 P.2d 280; and State v. Parks, 1919, 25 N.M. 395, 183 P. 433), although, according to appellant's statement, which was substantially the same as his testimony at the trial, the deceased took one step toward him in the dark room and appellant leapt upon him, according to his contention, in self-defense. However, the jury, having before it all of the facts and circumstances, could, and apparently did, determine that appellant was the aggressor. In a case such as this, it is frequently difficult, if not impossible, to pinpoint specific items of evidence that bear upon malice, but this court has previously said that malice may be implied from the mere fact that a deadly weapon was used. State v. Gilbert, supra; State v. Parks, supra. We are satisfied, from a painstaking examination of the entire transcript, that the court was correct in refusing to dismiss the charge of second degree murder.

■ Appellant next urges that inasmuch as the so-called confession was the only direct evidence of the crime, the state, therefore, is bound by the exculpatory statements therein relating to self-defense. There is no question but that, generally, the state must overcome evidence of ex-

cuse or justification included in a confession or admission. However, the rule is not as broad as contended for by appellant. The exculpatory matter is limited to some tangible affirmative defensive or factual matter capable of specific disproof, such as a claim of self-defense, and is not a mere reiteration of innocence. State v. Butler, 1934, 38 N.M. 453, 34 P.2d 1100; State v. Langdon, 1942, 46 N.M. 277, 127 P.2d 875; State v. Garcia, 1953, 57 N.M. 665, 262 P.2d 233. Here the appellant's confession contained the element of self-defense, but it should also be noted that the rule as to exculpatory matters in an extrajudicial confession is not the same where the defendant's testimony at the trial is substantially the same as that in the confession. State v. Gabaldon, 1939, 43 N.M. 525, 96 P.2d 293; 116 A.L.R. 1454.

■ The appellant's confession, which contained the elements of self-defense, was introduced by the state in order to fasten guilt upon the appellant, but we believe the trial court was not in error when it refused to give appellant's requested instruction on exculpatory statements contained in the confession, since the court adequately instructed as to self-defense and appellant voluntarily took the stand and his own testimony corresponded to the exculpatory matter contained in the confession introduced by the state.

Appellant's next point is that there is a lack of substantial evidence to prove the corpus delicti, unless the confession is considered as a part of such proof.

In State v. Chaves, 1921, 27 N.M. 504, 202 P. 694, we stated, with reference to proof of the corpus delicti in a homicide case, that it must be shown that the person whose death is alleged is in fact dead, and that his death was criminally caused.

■ There is no question about the death of the deceased, and his body was properly identified. The deceased, apparently in good health, was seen entering the small room and shortly thereafter was seen staggering into the bar. He was at that time caught by the bartender and it was apparent that he had been seriously injured. He died within an hour. The testimony of a pathologist revealed the extent of the cuts upon his body, and this doctor testified that the wound causing death was caused by some sharp object. The fact that he could not actually testify as to the weapon itself was not absolutely necessary, and it is obvious from the evidence, without any consideration of the statement by appellant, that the deceased died as a result of wounds inflicted by someone at the time in question. The testimony in the case suggests no other reasonable hypothesis, and we are satisfied that the corpus delicti was

adequately proven. State v. Chaves, supra; State v. Thorp, 1950, 70 Ariz. 80, 216 P.2d 415. Compare State v. Johnson, 1938, 95 Utah 572, 83 P.2d 1010.

■ Appellant's last point relates to the claimed error made by the district attorney in his closing argument. The only thing before us with respect to this appears in the supplemental certificate by the trial judge, which, insofar as material, is as follows:

"* * * That no record was made of closing arguments of counsel in said cause.

"That the District Attorney, in his closing statement to the jury, stated in effect that juries in Sandoval County traditionally and notoriously have failed to convict defendants and that it was the duty of this jury to clean up the bad situation involving teenagers and delinquents who go around carrying knives and stabbing people and that the jury should do so for the protection of their families.

"That thereafter, upon a hearing on said motions, the Court denied same, finding that such statements and comments made by the District Attorney were matters which were brought out by defendant's own witnesses and were matters of general knowledge and not prejudicial to Defendant."

There is no showing that any objection was made by appellant during the course of the argument itself, in order that the trial judge could at that time have cautioned counsel or properly instructed the jury. As stated, all we have before us is the certificate itself, and this is not sufficient. We would also observe that the judge, in ruling upon the motions, felt that the argument was not prejudicial and he was in a much better position than we to pass upon the prejudice, or claimed prejudice, in a situation such as this. Although we in no wise countenance counsel's using language in argument which is prejudicial, we will not lightly overturn the considered judgment of the trial court, particularly in a case such as this where the record is incomplete. Frank Bond & Son, Inc. v. Reserve Minerals Corp., 1959, 65 N.M. 257, 335 P.2d 858; State v. Parks, supra; State v. Sale, 1902, 119 Iowa 1, 92 N.W. 680, 95 N.W. 193.

Finding no merit in the contentions made by appellant, the judgment is affirmed. It is so ordered.

COMPTON, C. J., and CHAVEZ, J., concur.