The STATE of Utah, Plaintiff and Respondent,

v.

Lawrence PITTS, Defendant and Appellant.

No. 20290.

Supreme Court of Utah.

Jan. 28, 1986.

Rehearing Denied Dec. 3, 1986.

Nancy Bergeson, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

PER CURIAM:

Defendant contests his conviction of burglary under U.C.A., 1953, § 76–6–202 (as amended), claiming that he was entitled at trial to a jury instruction on the lesser offense of theft.[1] He also appeals his conviction on the basis that the evidence fails to show an unlawful entry with the intent to commit theft. We affirm.

The Handy Pantry is a convenience store located on Salt Lake City's west side. The front area of the building, where the retail goods are displayed and sold, is open to the public. At the rear of the retail area, a door opens into an office and other rooms behind. The door from the retail area into the office is generally left open unless the store's manager is working in the office. On both sides of the door, signs printed in red ink indicate to the public that the office area is for employees only and others will be prosecuted. Nonemployees are never permitted to enter into the office or the rooms behind except by specific invitation of the manager. The store's business records are kept in a small desk located in a far corner of the office away from the door. The store's blank checks are kept in the desk and a metal box underneath the desk.

On Saturday morning, August 4, 1984, the store received in the mail a dark yellow bank envelope containing its bank statement and cancelled checks. The envelope was placed on the desk in the back corner of the office.

On Saturday evening, defendant drove to the Handy Pantry store with two women— Miss Longton, who testified, and an unidentified woman—ostensibly to buy baby formula for defendant's child. Longton was the owner of the car which defendant was driving that evening and the next day when arrested. Defendant entered the store with the unnamed woman, while Longton remained outside to make a telephone call.

---

1. A person is guilty of burglary "if he enters or remains unlawfully in a building or any portion of a building with the intent to commit a felony or theft ...." U.C.A., 1953, § 76–6–202 (1978 ed.). A person commits theft if "he obtains or exercises unauthorized control over the property of another with the purpose to deprive him thereof." U.C.A., 1953, § 76–6–404 (1978 ed.).

In the store, defendant made no purchase of his own, but was observed hanging around the cash registers, apparently waiting for the woman to make her purchase. No one saw defendant leave the store, but when he returned to the car he had a dark yellow envelope similar in appearance to the store's bank envelope delivered that morning. Longton inquired regarding the envelope, and defendant told her that the envelope contained checks, but "they weren't for him, somebody else could use them."

Defendant drove to Miss Longton's home, where he dropped her off. Later that night, he drove her car to the home of another female friend, Sharon Spencer. She observed the bank envelope next to defendant in the car. He took the envelope with him into her house and kept it in front of him while watching television on the sofa. Early the next morning, defendant left the house, taking the bank envelope with him.

On Sunday morning, August 5, Miss Longton reported to the police that defendant had not returned her car. A police investigation located defendant and Longton's car later that same morning. An officer found in the glove compartment of the car the Handy Pantry bank envelope delivered to the store on Saturday. In the envelope were the store's cancelled checks and five blank checks. Four additional blank checks were still missing and were later rejected by the bank when their forged negotiation was attempted.

Defendant was charged with burglary of the checks and bank statements from the store. Defendant did not testify at trial. He offered no evidence to deny his entry into the store's office, explain his possession of the checks, or otherwise rebut the prosecution's evidence. He only attempted impeachment of Longton by reading a portion of her testimony at the preliminary hearing.

On appeal, defendant claims that the prosecution failed to establish that when he entered into the back of the Handy Pantry, he did so unlawfully, with the intent to commit theft. Defendant argues that the evidence of theft was sufficient to require the giving of an instruction on theft as a lesser offense to burglary. Inconsistently, he also claims that the State failed in its burden to prove his intent to commit theft.

In *State v. Baker*, Utah, 671 P.2d 152 (1983), and subsequent cases,[2] we clearly delineated the necessary elements that require the giving of a jury instruction on a lesser included offense when requested by the defendant: (1) To constitute an "included offense," elements of both the greater and lesser offenses must be related and there must be some overlap of the evidence required to establish the commission of each offense. *Id.* at 158–59. (2) Before the trial court must instruct the jury on the included offense, there must be a sufficient quantum of evidence to provide a rational basis for a verdict acquitting the defendant of the greater offense *and* convicting the defendant of the lesser offense. *Id.; see also* U.C.A., 1953, § 76–1–402(3)(a) & (4) (1978 ed.).

Defendant argues that theft is an offense included in burglary because there is an obvious relationship between the elements of each when an accused enters or remains unlawfully in a portion of a building "with the intent to commit a theft." The State replies that the societal interests protected by each offense are distinct and different. Therefore, under its proposed "inherent relationship" test, the State argues that there is no connection between burglary and theft.

At common law, the societal interests protected from burglary were the sanctity and security of occupancy and the dwelling place. 3 Torcia, *Wharton's Criminal Law* § 326, at 186 (14th ed. 1980). The interest violated by a theft was the right of owner-

---

2. *State v. Smith,* Utah, 700 P.2d 1106 (1985); *State v. Brown,* Utah, 694 P.2d 587 (1984); *State v. Oldroyd,* Utah, 685 P.2d 551 (1984); *State v. Shabata,* Utah, 678 P.2d 785 (1984); *State v.* *Bales,* Utah, 675 P.2d 573 (1983); *State v. Crick,* Utah, 675 P.2d 527 (1983). We reject the suggestion by the State that *State v. Brown,* 694 P.2d at 590, is inconsistent with *State v. Baker.*

ship and possession of property. *Id.* § 354, at 298. According to the State, because each crime was intended at common law to protect separate interests there was no "inherent relationship" between the offenses, and theft cannot be a lesser included offense of burglary. *United States v. Whitaker,* 447 F.2d 314, 319 (D.C.Cir.1971). However, such an evaluation of offenses based solely upon common law expectations reflects the very same rigidity we rejected in *Baker.* Such a test is inconsistent with and defeats the purpose of section 76–1–402(3), which requires a factual analysis. Our statutory definitions of criminal conduct and culpability are significantly different from the old common law. The State's analysis ignores the plain language of section 76–6–202(1), which includes the intent to commit a theft in the definition of "burglary."

■ Under *Baker,* an offense is included in a greater offense when there is "some relationship" between them and "some overlap" in the proof required to establish the elements of both offenses (*e.g.,* the intent requisite to commit theft). *See State v. Hill,* Utah, 674 P.2d 96 (1983) (theft may be a lesser included offense of aggravated robbery). In this case, theft is a lesser included offense of burglary. A significant relationship exists between these two offenses because the same specific intent is required for each. The fact that the intent to commit theft is not a necessary element of all burglaries does not obviate the relationship between the two offenses in this case.

■ However, the court did not improperly refuse the instruction because the requirement was not satisfied that there must be evidence to provide a rational basis for acquitting him of burglary and convicting him of theft. *State v. Baker,* 671 P.2d at 159; *State v. Bales,* 675 P.2d at 576; *State v. Smith,* 700 P.2d at 1110–11. There is no such evidence in this case.

Specifically, there was no evidence presented to the jury that defendant lawfully entered or remained in the rear portion of the building where the store's

checks were located. The evidence was undisputed that the office was not a retail sales area and not open to or used by the public. The area was off limits to customers and clearly so marked. Defendant offered no evidence that the back office was open to the public at any time, that he entered for any lawful purpose whatever, or that his purpose or intention in entering was benign.

■ Defendant is entitled to an instruction on theft to advance his theory only if there is any evidence that, if believed by the jury, would acquit defendant of the charge of burglary. Defendant does not claim that he never entered the back room at all. He did not testify that he mistakenly picked up the store's blank checks and bank records. There was no evidence that would permit the jury to find that defendant entered or remained in the back room for any purpose other than with the intent to commit a theft or other felony. The theory that defendant may have just innocently wandered back to find a restroom or that the office was open to the public is unsupported by any evidence. A mere theory argued by counsel but unsupported by any evidence will not satisfy the *Baker* analysis. Without offering any evidence that his entry into the rear office was lawful, defendant was not entitled to an instruction on theft. *Martinez v. State,* Tex.App., 635 S.W.2d 629 (1982). *See also Leppek v. State,* Wyo., 636 P.2d 1117 (1981); *State v. Ocean,* 24 Or.App. 289, 546 P.2d 150 (1976).

■ Defendant also argues that the evidence was insufficient to prove the requisite intent. Although the evidence as to defendant's unlawful entry and intent was circumstantial, it was not so ambiguous as to be susceptible to the interpretation that defendant was not guilty of burglary but was guilty of theft. Even an innocent entry into the office would not acquit defendant if he remained therein with the unlawful purpose of stealing the checks. Section 76–6–202(1); *People v. Blair,* 52 Ill.2d 371, 288 N.E.2d 443 (1972) (entrance into a public place is authorized only for the lawful purpose consistent with the reason the

building is so opened). But defendant did not testify, and there was no evidence that his entry or presence was with any intent other than to commit theft. *State v. Bales,* 675 P.2d at 576.

■ The mere unlawful entry into private premises may not alone support a finding of intent. But defendant's unexplained possession of another's property, his subsequent statements and conduct, and other unrebutted evidence of the surrounding circumstances also support the reasonable inference that defendant entered or remained in the office with the specific intent to commit theft. *Sims v. State,* 272 Ark. 308, 613 S.W.2d 820 (1981); *State v. Harper,* 235 Kan. 825, 685 P.2d 850 (1984); *see State v. Sisneros,* Utah, 631 P.2d 856 (1981); *State v. Brooks,* Utah, 631 P.2d 878, 881 (1981); *Wharton's Criminal Law, supra* §§ 338–40, at 217–22. To prove intent, the State is not required to show circumstances that are identical to the circumstances in the cases cited above. The circumstances evidenced in this case are more than sufficient to justify a finding of intent to commit theft. That finding is supported by substantial evidence.

We affirm the conviction.

Stewart, J., concurs in the result.